MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 80
Docket:      Fra-17-460
Argued:      June 13, 2018
Decided:     June 19, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

WESLEY M. VILLACCI

GORMAN, J.

[¶1]  Wesley M. Villacci appeals from a judgment of conviction of domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1) (2017), and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2017), entered by the trial court (Franklin County, *Mallonee, J.*) after a jury trial. Villacci argues that the court erred by failing to fully instruct the jury on the State's burden to disprove the statutory justifications Villacci generated in defense of the charges or on the consequences of the State's failure to meet that burden.  We vacate the judgment.[1]

---

[1]  Although not raised by Villacci, we note that the court also erred by failing to give the jury a specific unanimity instruction.  *See State v. Hanscom*, 2016 ME 184, ¶ 16, 152 A.3d 632.  It does not appear that either Villacci or the prosecutor requested such an instruction, despite the obvious need for one.

## I. BACKGROUND

[¶2]  Viewing the evidence presented at trial in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Jeskey*, 2016 ME 134, ¶ 30, 146 A.3d 127. In 2015, Villacci and the victim began an intimate relationship.  During a disagreement on October 1, 2016, Villacci hit the victim on her face, grabbed her by her hair and banged her head on the dashboard and side window of the vehicle he was driving, pushed her into the passenger side door, and kicked her.  The vehicle went off the road and crashed into some trees; after exiting the vehicle, Villacci again hit the victim's head hard enough that her "vision went black" and she dropped to the ground, whereupon Villacci continued hitting and kicking her. When Villacci and the victim later reached the victim's home, Villacci slapped the victim, punched her, pushed her into a wall and onto the ground, and placed his hands around the victim's throat and strangled her until she passed out. Villacci then began hitting and pushing the victim again.

[¶3]  Villacci assaulted the victim on multiple other occasions between October of 2016 and January of 2017—at least once per week and sometimes daily—by strangling her until she almost passed out; kicking her; hitting her; biting her; holding her face down in the snow; and slapping her face with an

open palm, giving her a bloody nose. On one occasion in November of 2016, Villacci ripped the towel off the victim after she exited the shower, whipped her with the towel, pushed her head into a wall, pulled her down the hall by her hair, and hit her with a broom handle. On another occasion in January of 2017, Villacci pushed the victim onto a table and held her there face-down while he punched her on her back and arms. The victim suffered bruises, abrasions, soreness, ringing in her ear, bite marks, and other injuries as a result of these incidents.

[¶4] By criminal complaint filed on January 6, 2017, and then by indictment filed on May 18, 2017, Villacci was charged with aggravated assault (Class B), 17-A M.R.S. § 208(1)(C) (2017); domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1); and violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A). He pleaded not guilty to all counts.

[¶5] The court conducted a jury trial on September 13 and 14, 2017. Villacci testified about, and his defense relied in large part on, the application of four statutory justifications: (1) self-defense, *see* 17-A M.R.S. § 108 (2017); (2) defense of premises, *see* 17-A M.R.S. § 104 (2017); (3) defense of property, *see* 17-A M.R.S. § 105 (2017); and (4) consent, *see* 17-A M.R.S. § 109 (2017).

4

[¶6]  In its jury instructions, the court described the elements of aggravated assault and domestic violence assault by tracking the language of the applicable statutes and then further defining various terms used in those statutes.  *See* 17-A M.R.S. §§ 35(1)-(3), 207-A(1)(B)(1), 208(1)(C) (2017); 19-A M.R.S. § 4002(4) (2017).  In other portions of the jury instructions, the court stated that "[t]he State always has the burden to prove each element of the offense charged beyond a reasonable doubt" and that "[y]our only interest is to determine whether the State has proved the pending charge beyond a reasonable doubt."

[¶7]  With the State's agreement that there was sufficient evidence to generate a jury instruction on each of the four justifications, the court also instructed the jury on the elements of the justifications, again by tracking the applicable language of those statutes:

> A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend . . . the person or a third person from what the person reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and the person may use a degree of such force that the person reasonably believes to be necessary for such purpose.
>
> A person in possession or control of the premises, or a person who is licensed or privileged to be thereon, is justified in using nondeadly force upon another person when and to the extent that the person reasonably believes it necessary to prevent or

terminate the commission of a criminal trespass by such other person in or upon such premises.

A defendant is justified in using a reasonable degree of nondeadly force upon another person when and to the extent that the person reasonably believes it necessary to prevent what is or reasonably appears to be an unlawful taking of the person's property, or criminal mischief, or to retake the person's property immediately following its taking.

It is a defense that when a defendant engages in conduct which would otherwise constitute a crime against the person or property of another, such other consented to the conduct and an element of the crime is negated as a result of consent.

When conduct is a crime because it causes or threatens bodily injury, consent to such conduct or to the infliction of such injury is a defense only if neither the injury inflicted, nor the injury threatened was such as to endanger life or to cause serious bodily injury.

Consent is not a defense within the meaning of this section if it is given by a person who by reason of intoxication, physical illness, mental illness or mental defect, including but not limited to dementia and other cognitive [impairments], or youth, is manifestly unable or known by the defendant to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the crime, or it is induced by force, duress or deception or undue influence.

*See* 17-A M.R.S. §§ 104(1), 105, 108(1), 109(1)-(3). No additional instruction was given regarding the statutory justifications. Neither party objected to the instructions as given.

6

[¶8]   The court then presented the jury with the verdict form, which asked only whether Villacci was guilty or not guilty of aggravated assault and domestic violence assault and made no mention of the statutory justifications. The jury deliberated for almost four hours before reaching a verdict;[2] it found Villacci guilty of domestic violence assault but not guilty of aggravated assault. The court also found Villacci guilty of violating a condition of release by committing new criminal conduct.[3]  By judgment dated September 21, 2017, the court sentenced Villacci to four and a half years in prison with all but three years suspended and four years of probation for the domestic violence assault. For violating a condition of release, the court sentenced Villacci to six months in jail, concurrent with the domestic violence assault charge.  Villacci appeals.

---

[2] During deliberations, the jury sent several notes to the court seeking additional information.  In the fourth note, the jury asked, "Please give us the definition of Aggravated Assault in writing if possible.  Thank you."  In response, the State requested that the court also supply the jury with the definitions of "intentionally," "knowingly," "recklessly," "bodily injury," and "strangulation," as terms that were incorporated into the elements of aggravated assault; the court agreed.  *See* 17-A M.R.S. §§ 35(1)-(3), 208(1)(C) (2017).  Villacci's counsel argued, "If you are going to do that though, you should also send in the defenses as well."  The court declined to provide additional or clarifying instructions on the justifications, reasoning that "while it is logically connected, they did not ask for the defenses, which is a distinct instruction."

[3] Villacci stipulated that a conviction on either the aggravated assault or the domestic violence assault would constitute a violation of a condition of release.

## II.  DISCUSSION

[¶9]  The sole issue before us regards the jury instructions given on the statutory justifications for domestic violence assault.[4]  When, as here, no objection was made to the instructions as given,[5] we review the instructions only for obvious error, that is, "highly prejudicial error tending to produce manifest injustice."  *State v. Baker*, 2015 ME 39, ¶ 11, 114 A.3d 214 (quotation marks omitted); *see* M.R.U. Crim. P. 52(b).  We review the jury instructions in their entirety to determine if the instructions "fail[ed] to inform the jury correctly and fairly in all necessary respects of the governing law."  *State v. Fox*, 2014 ME 136, ¶ 22, 105 A.3d 1029 (quotation marks omitted).

[¶10]  We have set out three categories of defenses in criminal matters: "a failure of the State's proof, an affirmative defense, and a justification or excuse."  *State v. Ouellette*, 2012 ME 11, ¶ 8, 37 A.3d 921.  "[A] justification places on the defendant a burden of production to generate an issue with sufficient evidence, and then imposes on the State the burden of persuasion to

---

[4] Because Villacci was found not guilty of aggravated assault, and because the parties agree that the violation of a condition of release charge is dependent on the conviction for domestic violence assault, only the domestic violence assault charge is at issue in this appeal.

[5] Challenging a jury instruction issued in response to a note from the jury does not constitute a timely objection to the instruction; objections to jury instructions must be made "before the jury retires to consider its verdict."  M.R.U. Crim. P. 30(b); *see State v. Baker*, 2015 ME 39, ¶¶ 6-7, 11, 114 A.3d 214.

disprove the defense."[6] *Id.; see* 17-A M.R.S. § 101(1) (2017). Thus, when the defendant generates a justification, "[i]t is the State's burden to both disprove [the justification] beyond a reasonable doubt and prove each element of the crime charged beyond a reasonable doubt." *Ouellette*, 2012 ME 11, ¶ 17, 37 A.3d 921. If the State fails to disprove at least one of the elements of the justification beyond a reasonable doubt, the justification constitutes a "complete defense, meaning that it negates the commission of the crime," even if the State otherwise proves all the elements of the crime charged. *Id.* ¶¶ 9, 17. Thus, to convict a defendant when a justification has been generated, the State must disprove, beyond a reasonable doubt, at least one element of the justification and prove every element of the crime charged. *Id.* ¶ 17.

[¶11] Here, the State did not dispute that the evidence generated all four justifications as to the domestic violence assault charge, and Villacci does not argue that the court mischaracterized the elements of the justifications. Villacci contends, however, that the court's jury instructions failed to adequately apprise the jury of the State's obligations to disprove the justifications beyond

---

[6] "In asserting a failure of the State's proof, the defendant argues that the State has not established one or more elements of the crime beyond a reasonable doubt, but the defendant himself has no burden. An affirmative defense, in contrast, places the burden of persuasion on the defendant to establish certain facts by a preponderance of the evidence." *State v. Ouellette*, 2012 ME 11, ¶ 8, 37 A.3d 921 (citations omitted); *see* 17-A M.R.S. § 101(1)-(2) (2017).

a reasonable doubt and failed to inform the jury that the State's inability to meet that burden would require the jury to acquit Villacci of the charge.

[¶12] Central to the disposition of the present appeal is our decision in *State v. Baker*, 2015 ME 39, 114 A.3d 214. In that case, the defendant was charged with multiple crimes, including aggravated assault, after an alleged domestic dispute. *Id.* ¶¶ 2-3. At trial, the court instructed the jury that if it found that the State had proved each element of the crimes charged beyond a reasonable doubt, it should find the defendant guilty. *Id.* ¶ 4. The court then instructed the jury on the self-defense justification, informing it that if it found the defendant had committed the offenses, it then had to decide if the defendant was acting in self-defense; that it was the State's burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense; and that if the State met its burden to prove that the defendant was not acting in self-defense, the jury should find the defendant guilty of the offenses proved. *Id.* ¶¶ 4-5.

[¶13] We concluded that the self-defense instructions suffered from two "structural flaws" that, taken together, amounted to obvious error. *Id.* ¶¶ 13, 18, 22. First, the court completed its aggravated assault instruction by informing the jury that if the State proved the elements of that charge beyond

a reasonable doubt, the jury should find the defendant guilty. *Id.* ¶ 14. This suggested to the jury that it could bypass consideration of the self-defense justification and find the defendant guilty based only on the State's proof of the elements of aggravated assault. *Id.* The court later instructed the jury that the State was also required to disprove the self-defense justification, but the conflict between the aggravated assault instruction and the self-defense instruction "resulted at least in an ambiguity [that] left the jury without clear guidance about whether self-defense was relevant to the charge of aggravated assault." *Id.* ¶ 15.

[¶14] The second flaw in the instructions was that, although the court informed the jury what its verdict should be if the State successfully disproved that the defendant acted in self-defense, the court failed to inform the jury that if the State did not disprove self-defense, the jury was required to acquit the defendant, even if the jury otherwise found that the defendant had committed all the elements of aggravated assault. *Id.* ¶ 16. Notwithstanding that the court referred to self-defense as a "justification," the court did not inform the jury what a justification is or explain its exculpatory effect. *Id.* Thus, "the jury was

left to guess about whether the law of self-defense could result in an acquittal or whether it might lead to some other result."[7]  *Id.* ¶ 18.

[¶15]  We distinguished *Baker* in *State v. Weaver*, another matter involving charges of aggravated assault in connection with a domestic dispute. 2016 ME 12, ¶¶ 2-5, 130 A.3d 972.  In that case, the court twice instructed the jury that, because the justification of self-defense was generated by the evidence, the State was obligated to prove the elements of aggravated assault and to disprove at least one element of self-defense.  *Id.* ¶ 7.  We concluded that although the court did not explicitly instruct the jury that it was required to acquit the defendant if it found that the State did not disprove self-defense beyond a reasonable doubt, the court's instructions as a whole accurately informed the jury of the State's entire burden.  *Id.* ¶ 13.  To the extent that the court erred by failing to inform the jury of its duty to acquit if the State did not disprove self-defense, that error did not rise to the level of obvious error because in *Weaver*, unlike in *Baker*, the court did not suggest that the jury could

---

[7] We also noted that the court could have cured the errors by giving the jury corrected written instructions in response to a jury note seeking clarification on what the court meant by saying the jury "should return a verdict of guilty if the State proved the charge of aggravated assault beyond a reasonable doubt."  *Baker*, 2015 ME 39, ¶¶ 19-21, 114 A.3d 214 (quotation marks omitted).  The instruction that the court provided in response, however, still did not inform the jury that it was required to acquit the defendant if it found that the State did not disprove self-defense.  *Id.* ¶ 20.

12

find the defendant guilty of aggravated assault without considering the State's burden to disprove self-defense. *Id.*

[¶16]  We again distinguished *Baker* in *State v. Marquis*, 2017 ME 104, 162 A.3d 818.  In that case, the defendant generated the self-defense justification in his trial for murder. *Id.* ¶¶ 11, 18, 21.  We concluded that the court's instruction—stating that the jury was required to find the defendant guilty if it found that the State proved each element of murder beyond a reasonable doubt—was error when read in isolation, but that the instruction had to be read in conjunction with the other jury instructions given. *Id.* ¶¶ 20-22.  Those other instructions informed the jury of the elements of the self-defense justification, the State's burden to disprove the self-defense justification beyond a reasonable doubt, and the jury's obligation to find the defendant not guilty if the State failed to meet that burden. *Id.* ¶ 22.  As in *Weaver*, we held that when the jury instructions were "viewed as a whole," the court's error was not obvious because the court did elsewhere instruct the jury that if it found that the State failed to disprove self-defense, it was required to find the defendant not guilty. *Id.* ¶¶ 18, 25-26 (quotation marks omitted).

[¶17]  Here, the sum total of the State's burden as explained in the jury instructions given was that the State had to prove the elements of the crime

charged beyond a reasonable doubt. This was error. Although the court accurately provided the elements of the justifications, it offered no indication of what a justification is and did not explain that the State had any burden to disprove at least one element of the justifications beyond a reasonable doubt; that the jury could find Villacci guilty only if it found that the State had met its burden to both disprove the justifications and prove the elements of the crime; or that the State's failure to disprove the justifications obligated the jury to find Villacci not guilty, even if the State otherwise met its burden of establishing each element of domestic violence assault beyond a reasonable doubt. In short, the jury was informed that the State would meet its obligations in establishing Villacci's guilt merely by proving each element of the crime charged beyond a reasonable doubt; the jury was otherwise left to wonder what legal affect, if any, the justifications had in the matter. *See Baker*, 2015 ME 39, ¶ 18, 114 A.3d 214. As in *Baker*, these instructions were "materially incomplete" and thereby misstated the law. *Id.*; *see* Alexander, *Maine Jury Instruction Manual* § 6-58, Lexis (2017-2018 ed., last visited May 18, 2018) (setting out sample instructions for self-defense consistent with *Baker*).

[¶18] The court also did not correct the deficiencies in its instructions when it had the opportunity to do so in responding to the notes the jury sent to

the court during deliberations, including the note in which the jury asked for clarification on the elements of aggravated assault. *See id.* ¶¶ 19, 22 ("The prejudice created by these errors was enhanced by the jurors' ongoing use of written instructions that memorialized the errors.").

[¶19] The State's attempt to liken this case to *Weaver* is unpersuasive. In *Weaver*, as in *Marquis*, the court expressly and sufficiently instructed the jury on the State's burden to disprove the justification. *Marquis*, 2017 ME 104, ¶¶ 22, 25, 162 A.3d 818; *Weaver*, 2016 ME 12, ¶¶ 7, 13, 130 A.3d 972. In contrast, here, as in *Baker*, the instructions improperly suggested to the jury that it could find the defendant guilty based only on the State's proof beyond a reasonable doubt of the elements of the crime, and they did not inform the jury that it had to acquit Villacci if it found that the State did not disprove the justifications. 2015 ME 39, ¶¶ 14-18, 114 A.3d 214. If anything, the court's instructions in Villacci's trial were even more incomplete and more inaccurate than those deemed obvious error in *Baker*; one portion of the jury instructions in *Baker* did inform the jury that the State had a burden to disprove the justification beyond a reasonable doubt, *id.* ¶ 5, but the jury instructions here made no mention of the role of the justifications in the jury's deliberations at

all.  As discussed at oral argument, neither the State nor Villacci alerted the trial justice to the gaps in the instructions.

[¶20]  These errors in the jury instructions were highly prejudicial and tended to produce a manifest injustice, particularly given that Villacci's defense was focused in large part on the application of the statutory justifications.  *See id.* ¶ 11; *Fox*, 2014 ME 136, ¶ 25, 105 A.3d 1029 ("An error affects the defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding." (quotation marks omitted)).  We conclude that the errors in the court's jury instructions here constitute obvious error, and on this basis, we vacate the judgment of conviction for domestic violence assault—and the attendant charge of violating a condition of release—and remand the matter for a new trial on these two charges.[8]

The entry is:

>                 Judgment vacated.  Remanded for a new trial.

---

[8]  The court also made independent findings, by the lower standard of proof of preponderance of the evidence, that Villacci had committed all three crimes charged, and it revoked his probation in a prior criminal matter, *State v. Villacci*, ANDCD-CR-2015-1196 (Me. Super. Ct., Androscoggin Cty., Sept. 21, 2017), on that basis; the court sentenced Villacci to serve the entire suspended portion of his sentence in that matter—338 days.  *See* 17-A M.R.S. § 1206(5) (2017).  We denied Villacci's request for a certificate of probable cause to appeal the probation revocation.

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Wesley Villacci

Andrew S. Robinson, District Attorney, and Claire G. Andrews, Asst. Dist. Atty. (orally), Prosecutorial District III, Lewiston, for appellee State of Maine

Franklin County Unified Criminal Docket docket number CR-2017-15
FOR CLERK REFERENCE ONLY